*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1426**

State of Minnesota,
Respondent,

vs.

Daniel Lee Kruse,
Appellant.

**Filed June 27, 2016
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-14-27853

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Connolly, Judge; and Kirk, Judge.

**CONNOLLY**, Judge

Appellant challenges his conviction of felony possession of burglary or theft tools, arguing that the district court abused its discretion and committed reversible error in instructing a deadlocked jury. Because the jury instruction was not an abuse of discretion, we affirm.

## FACTS

On March 3, 2015, appellant Daniel Kruse had a jury trial on a charge of felony possession of burglary or theft tools. Before the jury retired on March 3, the district court read 10 *Minnesota Practice* CRIMJIG 3.04 (2014) as part of the instructions. The jury deliberated for an hour and a half, until 4:30 p.m., during which time it sent two notes to the district court, one concerning a witness's testimony and the other about the "weight of eyewitness testimony."

About an hour after the jury reconvened the next morning, it sent the district court another note. This note said, "Your Honor, at this point we struggle for a unanimous decision. After [choosing] to sleep on it, we find for various reasons we are divided six-six." The district court read the note aloud to the attorneys and remarked that the jurors "haven't really been deliberating awfully long . . . [I]t was only an hour [this morning and] an hour-and-a-half last night." Both attorneys agreed that deliberations should continue.

The district court then repeated to the jury some of the instructions it had heard the previous day:

Your job will be to find what the facts are in this case by considering the evidence. Your best guide is your own good judgment, experience and common sense. You must decide what testimony to believe and how much weight to give it. You must decide the facts. You and only you can decide the facts. Do not take anything I say or do as a sign of what the verdict should be.

Once facts are decided you must follow the law. You must follow the law, even if you don't agree with it. It is your duty to decide the questions of fact in this case. It is my duty to give you the rules of law you must apply in arriving at your verdict. You must follow and apply the rules of law as I give them to you, even if you believe the law is or should be different. Deciding questions of fact is your exclusive responsibility.

Finally, in order for you to return a verdict, whether guilty or not guilty, each juror must agree with that verdict. Your verdict must be unanimous.

You should discuss the case with one another and deliberate with a view toward reaching agreement if you can do so without violating your individual judgment. You should decide the case for yourself, but only after you have discussed the case with your fellow jurors and have carefully considered their views. You should not hesitate to reexamine your views and change your opinion[s] if you become convinced they are erroneous, but you should not surrender your honest opinion simply because other jurors disagree or merely to reach a verdict.

So I'll ask you to go back and deliberate again, and obviously the deputy will take you to lunch if it gets to be lunchtime.

Appellant did not object to these instructions, which are verbatim renderings of parts of 10 *Minnesota Practice* CRIMJIG 1.02 (2014) and of CRIMJIG 3.04.

The jury returned with a guilty verdict; the verdict form indicated that the time was 12:43 p.m. Appellant challenges his conviction on the ground that the instruction in response to the deadlocked jury's note was an abuse of discretion.

3

**DECISION**

"We apply our abuse of discretion standard when reviewing a district court's charge to a jury to continue deliberating after the jury has indicated it was deadlocked." *State v. Cox*, 820 N.W.2d 540, 550 (Minn. 2012).

Appellant argues that the instructions repeated after the jury reported a deadlock were coercive and that the district court "instructed jurors in such a way that jurors concluded that they were required to reach a verdict or that a deadlock was not an option." But the district court specifically told the jurors to "deliberate with a view toward reaching agreement if you can do so without violating your individual judgment," thus acknowledging the possibility that the jurors would not be able to come to an agreement if doing so would violate the individual judgment of even one juror.

Appellant relies on *State v. Jones*, 556 N.W.2d 903 (Minn. 1996) to argue that "simply reinstructing the jury on CRIMJIG 3.04 after instructions using the mandatory language of CRIMJIG 1.02 was not a cure-all." His reliance is misplaced: the language to which he refers in the *Jones* instruction, "giving the proper charge, CRIMJIG 3.04, when the jury reache[s] a deadlock . . . is not a panacea," was given as part of a direction to district courts to give jury instructions verbatim rather than to paraphrase them. *Jones*, 556 N.W.2d at 911. "Having earlier paraphrased CRIMJIG 3.04, the trial court properly responded to the jury's impasse by reading 3.04 verbatim." *Id.* at 912. Here, the district court read CRIMJIG 3.04 verbatim to the jury before it retired, then read CRIMJIG 3.04 verbatim again after the jury reported an impasse, so the problem of paraphrasing did not arise.

4

Moreover, here as in *Jones*, the amount of time the jury spent deliberating was not excessive, and instructing it to keep deliberating did not coerce it and did result in a verdict. There was no abuse of discretion in the jury instructions. Indeed, this was a textbook response by the district court to a deadlocked jury and we commend the district court for its handling of this case.

**Affirmed.**